<u>NOT FOR PUBLICATION</u>

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | : | |
|---|---|---|
| MARGARET DOYLE, STEPHANIE RUTH KOKOS, and ALEC MAXON DOYLE, | : : : : | Civil Action No. 24-7686 (SRC) |
| Plaintiffs, | : : | **OPINION & ORDER** |
| v. | : : | |
| AMERICAN GENERAL LIFE INSURANCE COMPANY, | : : : | |
| Defendant. | : | |

**<u>CHESLER</u>, District Judge**

This matter comes before the Court on Defendant American General Life Insurance Company's ("Defendant" or "AGLIC") motion to dismiss the Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), (Dkt. No. 16). Plaintiffs Margaret Doyle, Stephanie Ruth Kokos, and Alec Maxon Doyle (collectively, "Plaintiffs") have opposed the motion. The Court heard oral argument on the motion on October 16, 2024. For the reasons set forth below, the motion will be granted in part and denied in part.

**I.**

This case arises from a dispute between the parties regarding a life insurance policy (the "Policy") Defendant issued to decedent, Kevin Doyle ("K.D."), in or around 2005 in the amount of $500,000. (Am. Compl. ¶ 5.) Plaintiffs are the designated beneficiaries under the Policy. (<u>Id.</u>) K.D. also paid additional premiums for the Policy's Premium Waiver Disability Benefit (the "Rider"). (<u>Id.</u> ¶ 6.) The Rider provided the following benefit:

> Upon receipt of due proof that the Insured is totally disabled, as defined below, we will waive each premium as it becomes due, while total disability continues, except:
>
>> a. no premium will be waived prior to the policy anniversary nearest the Insured's 15th birthday;
>>
>> b. no premium will be waived after the policy anniversary nearest the Insured's 65th birthday unless total disability has existed continuously on such date for more than 5 years.
>
> We will not waive a premium which became due more than one year before we were given written notice of a claim unless:
>
>> a. it is shown that it was not reasonably possible to give notice within one year after total disability began; and
>>
>> b. it is shown that notice was given as soon as was reasonably possible.

(Dkt. No. 16-3 at 16.)  The Rider also provided that it will terminate on the earliest of five listed dates, including "[u]pon termination of the policy" and "[w]hen any premium for this rider of the policy is in default beyond the end of the grace period." (Id. at 17.)

In or around 2017, K.D. began experiencing severe health problems as a result of his exposure to airborne toxins after 9/11 while commuting to work, which was directly across the street from where the World Trade Center stood. (Am. Compl. ¶ 7.) Because of his deteriorating health, K.D. stopped working and was approved for disability benefits under his Local 3 Union Pension, IBEW Disability Plan, and Pension Hospitalization and Benefit Plan in April 2018 and was approved for Social Security Disability Benefits beginning in October 2018. (Id. ¶¶ 8–9.)

In June 2018, K.D. was diagnosed with psychosis, which was induced by various steroid medications he was prescribed to treat his medical conditions. (Id. ¶ 10.) Psychosis disrupts a person's perceptions, thoughts, and ability to fully grasp reality. (Id.) K.D. discontinued his steroid medications and his psychosis eventually resolved, but his physical disabilities continued to advance. (Id. ¶ 11.)

On October 19, 2021, a doctor prescribed K.D. with two steroid medications to treat his health conditions, apparently unaware of K.D.'s prior adverse reaction to steroids. (Id. ¶ 15.) K.D. subsequently descended into a state of steroid-induced psychosis. (Id. ¶ 16.) In 2022, K.D.'s illnesses and isolation progressed and due to the psychosis, he became less connected to the world around him and began to lack the capacity to manage his affairs. (Id. ¶ 17.) This resulted in K.D.'s Social Security Disability benefits lapsing, his failure to pay his rent, and his failure to pay the premiums due on the Policy. (Id.) K.D. passed away later that year on December 10, 2022. (Id. ¶ 18.)

On March 15, 2023, K.D.'s insurance agent contacted Defendant to explain K.D.'s health status in the last year of his life and to request the Policy's benefits be paid to Plaintiffs. (Id. ¶ 21.) Defendant declined to pay benefits to Plaintiffs because Defendant said it did not receive a claim or indication of K.D.'s disability prior to the March 2023 communication and thus the Rider's benefit was precluded. (Id. ¶ 22.)

The Amended Complaint asserts two causes of action. (Id. ¶¶ 30–41.) Count I asserts that Defendant's failure to pay life insurance benefits under the Policy is a breach of contract. (Id. ¶¶ 32–33.) Count II asserts an equitable cause of action stemming from Defendant's failure and refusal to provide Plaintiffs with an original copy of the Policy and Rider issued to K.D. (Id. ¶¶ 35–41.)

Defendant now moves to dismiss the Amended Complaint as a whole.

## II.

To withstand a motion to dismiss for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. On a Rule 12(b)(6) motion, the Court must accept as true the well-pleaded facts of a complaint and any reasonable inference that may be drawn from those facts but need not credit conclusory statements couched as factual allegations. See id. ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The issue before the Court on a Rule 12(b)(6) motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1420 (3d Cir. 1997) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). "[A] district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." Id. at 1426. The Court, however, may properly consider documents that form the basis of a claim and documents that are "integral to or explicitly relied upon in the complaint." Id. (citations omitted).[1]

### A.

Defendant moves to dismiss Count I on the basis that it fails to state a cause of action for breach of contract. Under New Jersey law, a cause of action for breach of contract lies where (1) the parties entered into a contract, (2) the plaintiff performed under the contract, (3) the defendant did not perform under the contract, and (4) the defendant's breach or nonperformance cause a loss to the plaintiff. Goldfarb v. Solimine, 245 N.J. 326, 338 (2021). Taking all allegations in the Amended Complaint as true, the Policy constitutes a contract between Plaintiffs (as beneficiaries)

---

[1] For purposes of this motion, the Court also relies on the Policy and Rider attached to Defendant's motion for these documents are "integral to or explicitly relied upon in the complaint." In re Burlington Coat Factory Sec. Litig., 114 F.3d at 1426.

and Defendant, establishing the first element. (Dkt. No. 16-3.) Plaintiffs allege that the second element is met because K.D. paid his premiums—as required under the Policy—until early 2022, when he failed to pay his premium due to his experiencing of a steroid-induced psychosis, which continued until his death in December 2022. (Am. Compl. ¶¶ 15–18.) As for the third element, Plaintiffs allege that following K.D.'s death, his insurance agent informed Defendant of the circumstances surrounding K.D.'s health in 2022. (Id. ¶¶ 19, 21.) The insurance agent requested that Defendant pay the Policy's benefits to Plaintiffs because under the Rider, K.D. qualified for continued coverage under the Policy without payment of premiums due to his disability. (Id. ¶ 21.) Plaintiffs allege Defendant breached the contract when it denied this request to pay, and as a result, Plaintiffs suffered damages by not receiving the benefits under the Policy, establishing the fourth element. (Id. ¶¶ 22–24, 32–33.)

Defendant's position is that elements two and three are not met because K.D. failed to make his premium payment in early 2022, which caused the Policy and Rider to lapse and thereby terminate after the grace period. (Dkt. No. 19 at 3.) Defendant also argues that it had no obligation to waive premium payments under the Rider because the Rider's Notice of Proof of Disability's requirements constitute a condition precedent that K.D. did not attain. (Id. at 4–5.)

The Supreme Court of New Jersey's decision in Kampf v. Franklin Life Insurance, 33 N.J. 36 (1960) does not support Defendant's arguments and the Court does not find it inapposite as Defendant asserts. In Kampf, the court considered whether a failure to make a premium payment was excused under the terms of a policy's waiver of premium provision when the insured became sick during his policy's grace period and that illness continued until his death. Id. at 39. The court held that it was excused because "the existence and not the proof of disability fixes the insurer's liability," that a plaintiff "is not necessarily prevented from availing herself of the benefits of the

waiver of premiums provision because notice and proof of disability were not furnished during the deceased's lifetime," and that "[e]ven the cases which have construed the notice requirements to be conditions precedent have held that where the condition of the insured makes it impossible for him to give notice, the requirements are dispensed with until it is possible for such notice to be given." Id. at 49.

Here, the Amended Complaint explicitly pleads that K.D. became disabled by way of his steroid-induced psychosis, missed his early 2022 premium payment for the first time, and remained in a state of psychosis throughout the Policy's grace period and until his death in December 2022. (Am. Compl. ¶¶ 15–18.) As discussed in Kampf, K.D. paid for the right to have his premiums waived while he was disabled: the Rider provides that if "a. it is shown that it was not reasonably possible to give notice within one year after total disability began; and b. it is shown that notice was given as soon as was reasonably possible," Defendant must "waive a premium which became due more than one year before we were given written notice of a claim." (See Dkt. No. 16-3 at 16.) The Rider's Notice of Proof of Disability provision also contained a clause stating that "[f]ailure to give such notice and proof of claim shall not invalidate that claim if it is shown that notice and proof were given as soon as was reasonably possible." (Id.) "[T]o say that [K.D.] should lose the benefit of his policy because he failed through mental or physical incapacity to present proofs would be harsh and unreasonable under the circumstances." See Kampf, 33 N.J. at 48 (quoting Swann v. Atl. Life Ins., 156 Va. 852, 862 (1931)).

Indeed, to give K.D. "the full benefit of his policy, and carry out the intention which was doubtless in the minds of the contracting parties when the policy was written, his policy should not be allowed to forfeit where his disability occurs during the grace period of his policy and continues until his death." Id. at 49 (quoting Minn. Mut. Life Ins. v. Marshall, 29 F.2d 977, 978

(8th Cir. 1928)). The Court agrees. "However much the legal mind may differ as to the meaning of [the Rider's provisions], the ordinary layman would construe them to mean that, in the event he became disabled before his premium fell due, his insurance would be continued until his disability was removed or until this death." Id. at 48 (citation omitted).

While true that "[c]ourts cannot make contracts for parties" and "can only enforce the contracts which the parties themselves have made," id. at 43 (citation omitted), "[a]n insurance contract should comport with the parties' intent and with the reasonable expectations of the insured." Seidenberg v. Mut. Life Ins. of N.Y., 949 F. Supp. 269, 275 (D.N.J. 1996). New Jersey's doctrine of reasonable expectations exists so that "[w]hen members of the public purchase policies of insurance," they receive "the broad measure of protection necessary to fulfill their reasonable expectations" and "should not be subjected to technical encumbrances or to hidden pitfalls and their policies should be construed liberally in their favor to the end that coverage is afforded 'to the full extent that any fair interpretation will allow.'" Kievit v. Loyal Protective Life Ins., 34 N.J. 475, 482 (1961) (citation omitted).

If the Policy and Rider were to terminate because K.D. was in a state of psychosis during his grace period following his first missed premium payment, such a construction "would be contrary to the full purpose of the contract and deprive the insured of one of the principal benefits of his policy." Kampf, 33 N.J. at 48 (citation omitted). Plaintiffs' reasonable expectations here were that K.D. made additional premium payments for the Rider that would protect him and his beneficiaries in case of total disability and any inability to make premium payments during the time in which he remained disabled. (Am. Compl. ¶ 6.) Defendant's interpretation that the Policy and Rider terminated full stop following the grace period, despite K.D. being in a state of psychosis

during that grace period, "if read literally, would largely nullify the insurance." See Kievit, 34 N.J. at 483.

Further, Defendant's argument that the Rider's Notice of Proof of Disability provision contained a condition precedent also presents an interpretation of the Policy that would lead to "harsh and unreasonable" results under the circumstances. See Kampf, 33 N.J. at 48. In Kampf, the court found it to be a sound conclusion that in another case, "the giving of notice and proof of disability was not a condition precedent to the right to a waiver of premiums where the insured through no fault of his own has become, while the policy is in force, mentally and physically incapable of giving notice or furnishing the proofs . . . ." Id. (quoting Swann, 156 Va. at 862). And even if the Rider contained a condition precedent, Kampf held that even cases construing notice requirements as conditions precedent "have held that where the condition of the insured makes it impossible for him to give notice, the requirements are dispensed with until it is possible for such notice to be given." Id. at 49. Again, Plaintiffs sufficiently pled that K.D.'s second bout of a steroid-induced psychosis occurred while the Policy was still in effect and lasted until his death, making it impossible for K.D. to have given notice. (Am. Compl. ¶¶ 15–18.)

Plaintiffs also raise New Jersey's late-notice defense in their opposition, which provides that an insurer may "not forfeit the bargained-for protection unless there are both a breach of the notice provision and a likelihood of appreciable prejudice." Cooper v. Gov't Emps. Ins., 51 N.J. 86, 94 (1968); see also Fed. Ins. By and Through Associated Aviation Underwriters v. Purex Indus., Inc., 972 F. Supp. 872, 880 (D.N.J. 1997) ("New Jersey law is clear that an insurer may deny coverage on the basis of a notice clause only after proving both that the insured breached the notice provision and that the insurer suffered a likelihood of appreciable prejudice as a result.").

While Defendant argues that it is under no obligation to demonstrate prejudice, Plaintiffs' Amended Complaint alleges Defendant suffered no prejudice as a result of the late notice because Defendant continued to receive K.D.'s payments of premiums under the Policy and the Rider until early 2022. (Am. Compl. ¶ 24.) It appears to the Court that given the fact that Defendant suffered no prejudice for K.D.'s failure to give notice and proof of disability while he was paying his premiums, his failure to provide notice during this period would not result in a waiver of his right to exercise the premium waiver subsequent to his failure to pay. See, e.g., Sirkin by Albies v. Phillips Colls., Inc., 779 F. Supp. 751, 757–58 (D.N.J. 1991) (discussing the "common-sense reasoning" behind the court's holding that "where an insured misses a premium deadline under COBRA due to the insured's incapacity to know of or meet her obligation, the deadline for that premium payment is tolled for a reasonable period of time until the insured or her legally appointed guardian is able to cure the deficiency" because the "mental incapacity was the event insured against").

Though Defendant argues that the Amended Complaint shows K.D. was capable of giving notice and proof of disability prior to the Policy lapsing, that is an issue for the trier of fact to determine, not the Court on a Rule 12(b)(6) motion. The Court also does not and cannot consider the conversations Defendant argues occurred between itself and K.D. in its briefings. Plaintiffs present sufficient facts to make it a question of fact for the jury as to whether K.D. was reasonably incapable of providing notice and proof of disability and whether Plaintiffs provided notice and proof of disability as soon as was reasonably possible. The Court is persuaded that Plaintiffs' Amended Complaint contains enough facts to support a cause of action for breach of contract at the motion to dismiss stage. Defendant's motion to dismiss as to Count I is denied.

**B.**

Defendant moves to dismiss Count II for failing to state a claim. Plaintiffs' second cause of action is alleged as a hybrid breach of the implied covenant of good faith and fair dealing and an unjust enrichment claim. No matter how Plaintiffs style this equitable cause of action, the Amended Complaint, on its face, fails to make out a cause of action for either.

To recover on a claim for breach of the implied covenant of good faith and fair dealing, Plaintiffs must prove that: "(1) a contract exists between the parties; (2) the plaintiff performed under the terms of the contract; (3) the defendant acted in bad faith with the purpose of depriving the plaintiff of rights or benefits under the contract; and (4) the defendant's actions caused the plaintiff to sustain damages." Luongo v. Vill. Supermarket, Inc., 261 F. Supp. 3d 520, 531–32 (D.N.J. 2017). "[A] plaintiff must also prove the defendant's bad motive or intention." China Falcon Flying Ltd. v. Dassault Falcon Jet Corp., 329 F. Supp. 3d 56, 74 (D.N.J. 2018) (alteration in original) (quoting Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 110 (2007)). A breach of this covenant does not occur where a party makes a decision that disadvantages the other party or behaves in a way that is not altruistic to the other party. See Fabbro v. DRX Urgent Care, LLC, 616 F. App'x 485, 488 (3d Cir. 2015). "Absent bad motive or intention, decisions a contract expressly permits which happen to result in economic disadvantage to the other party are of no legal significance." Elliott & Frantz, Inc. v. Ingersoll-Rand Co., 457 F.3d 312, 329 (3d Cir. 2006).

In support of this claim, Plaintiffs allege that after Defendant denied their claim for benefits under the Policy on April 25, 2023, Defendant "failed and refused" to produce a copy of the original Policy pursuant to Plaintiffs' July 6, 2023 request. (Am. Compl. ¶ 22, 25–27.) A month later, on August 4, 2023, Defendant produced a "specimen" purportedly reflecting the same terms and conditions of the Policy issued to K.D. (Id. ¶ 27.) The specimen, however, did not include

the Rider. (Id.) Plaintiffs allege that Defendant's failure to produce an original copy of the Policy and only producing a specimen with no accompanying rider, was an attempt by Defendant to deceive Plaintiffs and deprive them of their right to invoke the protections of the Rider. (Id. ¶ 39.) Plaintiffs further allege that this act was "inequitable, deceitful, in bad faith" and resulted in "bad faith claims handling." (Id. ¶¶ 40–41.)

Though the Court "must accept as true all of the allegations contained in a complaint," it need not accept all legal conclusions as true. See Iqbal, 556 U.S. at 678. The Court cannot glean any allegations establishing Defendant's bad motive or bad faith intentions from the face of the Amended Complaint.

Plaintiffs' attempt to plead unjust enrichment in the alternative likewise lacks muster. Unjust enrichment is a cause of action in and of itself, which requires a plaintiff to show that it "received a benefit and that retention of that benefit without payment would be unjust." Plastic Surgery Ctr., P.A. v. Aetna Life Ins., 967 F.3d 218, 240 (3d Cir. 2020) (quoting Thieme v. Aucoin-Thieme, 227 N.J. 269, 288 (2016)). Such retention of a benefit must enrich "defendant beyond its contractual rights." Eli Lilly and Co. v. Roussel Corp., 23 F. Supp. 2d 460, 496 (D.N.J. 1998) (quoting VRG Corp. v. GKN Realty, 135 N.J. 539, 554 (1994)). Plaintiffs allege that Defendant received the benefit of K.D.'s premium payments and retention of those payments without paying the Policy's $500,000 benefit to Plaintiffs is unjust. (Am. Compl. ¶¶ 24, 41.) This allegation, however, fails to show how Defendant was enriched beyond its contractual rights and is simply duplicative of Plaintiffs' breach of contract claim. Additionally, Plaintiffs did not confer a benefit on Defendant, K.D. did. See, e.g., Eli Lilly and Co., 23 F. Supp. 2d at 496 ("[I]t is the plaintiff's (as opposed to a third party's) conferral of a benefit on defendant which forms the basis of an unjust enrichment claim."). Count II will therefore be dismissed.

\* \* \*

For these reasons,

**IT IS** on this 30th day of October, 2024

**ORDERED** that Defendant's motion to dismiss, (Dkt. No. 16), Count I of the First Amended Complaint is **DENIED**; and it is further

**ORDERED** that Defendant's motion to dismiss, (Dkt. No. 16), Count II of the First Amended Complaint is **GRANTED**.

       *s/ Stanley R. Chesler*
       STANLEY R. CHESLER, U.S.D.J.